KRISTIN HENRY (Cal. Bar No. 220908)
Sierra Club
85 Second Street, 2nd Floor
San Francisco, CA 94105
Telephone: (415) 977-5709
Facsimile:  (415) 977-5793
Kristin.Henry@sierraclub.org

Robert Ukeiley (*Pro Hac Vice* Application Pending)
Law Office of Robert Ukeiley
435R Chestnut Street, Suite 1
Berea, KY 40403
Telephone: (859) 986-5402
Facsimile:  (866) 618-1017
rukeiley@igc.org

Counsel for Plaintiffs Midwest Environmental Defense Center and Sierra Club

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MIDWEST ENVIRONMENTAL DEFENSE CENTER, and<br><br>SIERRA CLUB,<br><br>    Plaintiffs,<br><br>  v.<br><br>LISA P. JACKSON, in her official capacity as Administrator of the United States Environmental Protection Agency,<br><br>    Defendant. | Case No. 3:11-cv-5694-JSC<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>(Clean Air Act, 42 U.S.C. §§ 7401 *et. seq.*) |

**INTRODUCTION**

1. Plaintiffs are amending this complaint to add Sierra Club as a Plaintiff and to add a claim for failure to promulgate prevention of significant deterioration regulations within two years. As previously stated in the original complaint, Plaintiffs Midwest Environmental Defense Center and Sierra Club bring this Clean Air Act citizen suit to compel the United States Environmental Protection Agency ("EPA") to undertake overdue mandatory duties. Specifically, Plaintiffs challenge the failure of Defendant, Lisa P. Jackson, in her official capacity as Administrator of the EPA, to perform certain mandatory duties required by the Clean Air Act, 42 U.S.C. §§ 7401-7671q. These duties include the failure to make a finding of failure to submit under 42 U.S.C. § 7410(k)(1)(B) for multiple State Implementation Plans ("SIPs") submittal requirements for all fifty states except Mississippi, South Carolina, Tennessee, Kentucky, Florida and Alabama, as well as the District of Columbia, and Puerto Rico ("States")[1], and the failure to promulgate regulations to prevent the significant deterioration of air quality under 42 U.S.C. § 7476(a) for the 2008 ozone National Ambient Air Quality Standard.

**JURISDICTION**

2. This case is a Clean Air Act citizen suit. Therefore, the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 42 U.S.C. § 7604(a)(2) (citizen suits for failure to perform a non-discretionary duty required by the Clean Air Act).

---

[1] For the purposes of this complaint, none of these allegations should be considered to apply to Guam, the Virgin Islands, American Samoa or the Northern Mariana Islands.

1

FIRST AMENDED COMPLAINT

**NOTICE**

3. On September 28, 2011, Plaintiff Midwest Environmental Defense Center mailed a letter via certified mail, return receipt requested, to Defendant Lisa P. Jackson stating that it intends to sue Defendant for the violations alleged in this First Amended Complaint regarding failure to make a finding of failure to submit Infrastructure State Implementation Plans for the 2008 ozone NAAQS. On October 3, 2011 Plaintiff Sierra Club mailed a letter via certified mail, return receipt requested, to Defendant Lisa P. Jackson stating that it intends to sue Defendant for the violations alleged in this First Amended Complaint. More than sixty days have passed since Plaintiffs' mailed these notice of intent to sue letters. To date, Defendant has not remedied the violations alleged in this Complaint. Therefore, an actual controversy exists.

**VENUE**

4. Defendant EPA resides in this judicial district. This civil action is brought against an officer of the United States acting in her official capacity and a substantial part of the events or omissions giving rise to the claims in this case occurred in the Northern District of California. One of the claims in this Complaint concerns EPA's failure to perform mandatory duties with regard to Arizona, California, Hawaii, and Nevada. EPA Region 9, whose jurisdiction includes Arizona, California, Hawaii, and Nevada, is headquartered in San Francisco. Thus several of the events and omissions at issue in this action occurred at EPA's Region 9 headquarters in San Francisco. In addition, Plaintiff Sierra Club is headquartered in San Francisco and one of Sierra Club's counsel is located in San Francisco. Therefore, venue is proper in this Court pursuant to 28 U.S.C. § 1391(e).

| | |
|---|---|
| 1 | **INTRADISTRICT ASSIGNMENT** |
| 2 | 5. A substantial part of the events and omissions giving rise to the claims in this case |
| 3 | occurred in the County of San Francisco. Accordingly, assignment to the San Francisco |
| 4 | Division or the Oakland Division is proper pursuant to Civil L.R. 3-2(c) and (d). |
| 5 | |
| 6 | **PARTIES** |
| 7 | 6. Plaintiff MIDWEST ENVIRONMENTAL DEFENSE CENTER is a public interest |
| 8 | environmental organization based in Madison, Wisconsin. Midwest Environmental Defense |
| 9 | Center's mission is to protect and restore the environment, natural resources, and public health of |
| 10 | the upper Midwest by ensuring that laws designed to protect the public are applied and enforced |
| 11 | as they were intended. |
| 12 | 7. Plaintiff SIERRA CLUB is a national grassroots nonprofit conservation organization |
| 13 | formed in 1892. Sierra Club's purpose includes practicing and promoting the responsible use of |
| 14 | earth's ecosystems and resources, and protecting and restoring the quality of the natural and |
| 15 | human environment. Sierra Club has over 600,000 members nationally. |
| 16 | 8. Members and staffs of Midwest Environmental Defense Center and Sierra Club live, |
| 17 | work, recreate, and travel throughout the States and will continue to do so on a regular basis. |
| 18 | Ozone in the affected States threatens and damages, and will continue to threaten and damage, |
| 19 | the health and welfare of Plaintiffs' staffs and members. Ozone diminishes Midwest |
| 20 | Environmental Defense Center and Sierra Club staffs' and members', as well as the public's, |
| 21 | ability to enjoy the aesthetic qualities and recreational opportunities of the respective areas. |
| 22 | 9. EPA's failure to timely perform the mandatory duties described herein also adversely |
| 23 | affect Plaintiffs, as well as their staffs and members, by depriving them of procedural protection |

| | |
|---|---|
| 28 | FIRST AMENDED COMPLAINT |

1  and opportunities, as well as information that they are entitled to under the Clean Air Act. The
2  failure of EPA to perform the mandatory duties also creates uncertainty for Plaintiffs' staffs and
3  members as to whether they are exposed to excess air pollution.
4  10.     The above injuries will continue until the Court grants the relief requested herein.
5  11.     Defendant LISA P. JACKSON is the Administrator of the United States Environmental
6  Protection Agency. In that role Administrator Jackson has been charged by Congress with the
7  duty to administer the Clean Air Act, including the mandatory duties at issue in this case.

**LEGAL BACKGROUND**

10  12.    Congress enacted the Clean Air Act to "speed up, expand, and intensify the war against
11  air pollution in the United States with a view to assuring that the air we breathe throughout the
12  Nation is wholesome once again." H.R.Rep. No. 1146, 91st Cong., 2d Sess. 1,1, 1970 U.S.Code
13  Cong. & Admin. News 5356, 5356. To promote this, the Clean Air Act requires EPA to set
14  National Ambient Air Quality Standards establishing maximum allowable concentrations for
15  certain pollutants, including ozone.
16  13.    Adverse impacts arise from ground-level ozone ("ozone") pollution, commonly referred
17  to as smog. Ozone represents a serious air quality issue in many parts of the United States.
18  Exposure to ozone pollution causes numerous impacts to a person's respiratory system,
19  including asthma, pneumonia, and bronchitis, and can result in the permanent scarring of lung
20  tissue. Moreover, the detrimental effects extend beyond public health. Ozone pollution also
21  interferes with vegetation's ability to function properly. This interference results in injuries such
22  as decreased crop yields and damage to native ecosystems.

14. The Clean Air Act requires each state to submit a state implementation plan for every promulgation or revision of a National Ambient Air Quality Standard, within three years of that standard's promulgation or revision, that provides for the "implementation, maintenance, and enforcement" of the standard. 42 U.S.C. § 7410(a)(1). These are often referred to as "Infrastructure" state implementation plans. An Infrastructure state implementation plan submittal must meet the requirements listed under 42 U.S.C. § 7410(a)(2). *See* 42 U.S.C. §§ 7410(a)(2)(A)-(M).

15. The Clean Air Act requires EPA to determine whether any state implementation plan submittal is administratively complete. 42 U.S.C. 7410(k)(1)(B). EPA must make this determination by "no later than 6 months after the date, if any, by which a State is required to submit the plan or revision." *Id.*

16. If a state fails to submit any required state implementation plan, there is no submittal that may be deemed administratively complete, and EPA must make a determination stating that the state failed to submit the required state implementation plan. 42 U.S.C. § 7410(k)(1)(B). This is referred to as a "finding of failure to submit."

17. After promulgation of a National Ambient Air Quality Standard, either new or revised, EPA is obligated to "promulgate regulations to prevent the significant deterioration of air quality [.]" 42 U.S.C. § 7476(a). Also known as PSD rules, the Clean Air Act requires that such regulations address several pollutants, including photochemical oxidants, otherwise known as ozone.[2] *Id*. EPA "shall" promulgate PSD rules "not more than 2 years after the date of promulgation" of a National Ambient Air Quality Standard.[3] *Id*.

---

[2] The statute actually refers to "photochemical oxidants." However, as the EPA has noted, "[o]zone is the oxidant found in the largest quantities in the atmosphere." 70 Fed. Reg. 59582, 59590 (Oct. 12, 2005). To this end, although the EPA originally promulgated national ambient air quality standards for photochemical oxidants in 1971, the

5

FIRST AMENDED COMPLAINT

18. EPA has made clear that Section 166(a) "provides that EPA establish pollutant specific PSD regulations, such as increments, after the establishment of National Ambient Air Quality Standards for the applicable [pollutant]" and "provides that the EPA will promulgate new PSD regulations under section 166, including new increments if appropriate, within 2 years from the promulgation of any National Ambient Air Quality Standards[.]" 75 Fed. Reg. 64864, 64880 (Oct. 20, 2010). Thus, any time EPA promulgates a National Ambient Air Quality Standard, new or revised, the Agency is obligated to promulgate PSD rules within two years.

19. The goal of PSD is to "protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1). Specifically, regulations promulgated in accordance with Section 166(a) shall "provide specific numerical measures against which permit applications [for stationary sources of air pollution] may be evaluated, a framework for stimulating improved control technology, protection of air quality values, and fulfill the goals and purposes set forth in section 101 and section 160." 42 U.S.C. § 7476(c).

**CLAIMS FOR RELIEF**

**CLAIM ONE**
(EPA's Failure to find that States have not Submitted 2008 ozone National Ambient Air Quality Standards Infrastructure State Implementation Plans)

20. Plaintiffs incorporate by reference paragraphs 1 through 19.

---

Agency later changed the chemical designation from "photochemical oxidants" to "ozone." *See* 44 Fed. Reg. 8202 (Feb. 8, 1979). Thus, according to the EPA, the reference to photochemical oxidants at Section 166(a) is considered to be a reference to ozone.
[3] This requirement applies to any National Ambient Air Quality Standards promulgated after 1977.

21. Pursuant to the Clean Air Act, each state must submit an "Infrastructure" state implementation plan that provides for the "implementation, maintenance, and enforcement" of a National Ambient Air Quality Standard within three years of a standard's promulgation or revision. 42 U.S.C. § 7410(a)(1).

22. The Clean Air Act requires EPA to determine whether a state implementation plan submittal is administratively complete. *See* 42 U.S.C. 7410(k)(1)(B).

23. If a state fails to submit any required state implementation plan, there is no submittal that may be deemed administratively complete and EPA must make a determination stating that the state failed to submit the required state implementation plan. *See* 42 U.S.C. § 7410(k)(1)(B). This is referred to as a "finding of failure to submit."

24. Thus, if a state does not submit a state implementation plan, EPA must make a finding of failure to submit no later than six months after the date by which the state implementation plan submittal was due. *See* 42 U.S.C. § 7410(k)(1)(B).

25. On March 12, 2008, the EPA promulgated revised National Ambient Air Quality Standards for ozone. *See* 73 Fed. Reg. 16436-16514 (March 27, 2008). EPA set a new standard limiting ozone concentrations to no more than 0.075 parts per million over an 8-hour period. *See* 40 C.F.R. § 50.15.

26. In accordance with Section 110(a)(1) of the Clean Air Act, States are required to submit SIPs to attain and maintain the National Ambient Air Quality Standards within three years of the promulgation or revision of a National Ambient Air Quality Standard. *See* 42 U.S.C. § 7410(a)(1). In assuring that SIPs attain and maintain the National Ambient Air Quality Standards in accordance with Section 110(a)(1), States must ensure their SIPs include

7

FIRST AMENDED COMPLAINT

requirements set forth under Section 110(a)(2). *See* 74 U.S.C. § 7410(a)(2). These requirements, include, but are not limited to:

- Enforceable emission limits (42 U.S.C. § 7410(a)(2)(A));
- Establishment and operation of monitoring systems (42 U.S.C. § 7410(a)(2)(B));
- Enforcement programs (42 U.S.C. § 7410(a)(2)(C));
- Limits on interstate transport (42 U.S.C. § 7410(a)(2)(D));
- Assurances of adequate authority (42 U.S.C. § 7410(a)(2)(E));
- Monitoring of emissions from stationary sources (42 U.S.C. § 7410(a)(2)(F));
- Authority to exercise emergency powers (42 U.S.C. § 7410(a)(2)(G));
- Provisions that provide for the revision of SIPs (42 U.S.C. § 7410(a)(2)(H));
- Meet consultation, public notification, and Prevention of Significant Deterioration ("PSD") requirements (42 U.S.C. § 7410(a)(2)(J));
- Provide for the modeling of air quality (42 U.S.C. § 7410(a)(2)(K));
- Establish permitting fees (42 U.S.C. § 7410(a)(2)(L));
- Ensure consultation and participation by local entities (42 U.S.C. §7410(a)(2)(M)).

These requirements are collectively referred to as the "general infrastructure elements." *See* U.S. EPA, State Implementation Plan Overview, http://www.epa.gov/air/urbanair/sipstatus/overview.html (last viewed Nov. 29, 2011).

27. States must submit Infrastructure SIPs for the 2008 ozone National Ambient Air Quality Standards by no later than March 12, 2011. *See* 73 Fed. Reg. 16436, 16503 (March 27, 2008). *See also* http://www.epa.gov/air/urbanair/sipstatus/reports/al_infrabypoll.html#x110_a__2__ozone__2008_

FIRST AMENDED COMPLAINT

28. None of the States except Mississippi, South Carolina, Tennessee, Kentucky, Florida and Alabama have submitted these Infrastructure SIPs for the 2008 ozone National Ambient Air Quality Standards.

29. The Administrator is required to make a finding as to whether a State has submitted the required SIP no later than six months after the date by which the State was required to submit such a SIP. *See* 42 U.S.C. § 7410(k)(1)(B). Thus, EPA must make findings of failure to submit SIPs for the 2008 ozone National Ambient Air Quality Standards by no later than September 12, 2011.

30. EPA has not made findings that any States have failed to submit Infrastructure SIPs for the 2008 ozone National Ambient Air Quality Standard.

31. Thus, EPA is in violation of its mandatory duty with regard to all the states except Mississippi, South Carolina, Tennessee, Kentucky, Florida, and Alabama.

### CLAIM TWO

(EPA Failure to Promulgate Regulations to Prevent Significant Deterioration)

32. Plaintiffs incorporate by reference paragraphs 1 through 31.

33. EPA promulgated a revised National Ambient Air Quality Standard for ozone on March 12, 2008. *See* 73 Fed. Reg. 16436 (March 27, 2008).

34. The Clean Air Act, and EPA's interpretation of Section 166(a) of the Clean Air Act, require EPA to promulgate PSD rules for the 2008 ozone National Ambient Air Quality Standards within two years of the promulgation of the National Ambient Air Quality Standards. 42 U.S.C. § 7476(a). Thus, EPA was obligated to promulgate PSD rules for the 2008 ozone National Ambient Air Quality Standards by no later than March 12, 2010.

35. EPA has yet to promulgate PSD rules for the 2008 ozone National Ambient Air Quality Standards.

36. Thus, EPA is in violation of a mandatory duty under the Clean Air Act.

## REQUEST FOR RELIEF

WHEREFORE, Midwest Environmental Defense Center and Sierra Club respectfully requests that the Court:

A. Declare that the Administrator is in violation of the Clean Air Act with regard to her failure to perform each mandatory duty listed above;

B. Issue a mandatory injunction requiring the Administrator to perform her mandatory duties by certain dates;

C. Retain jurisdiction of this matter for purposes of enforcing and effectuating the Court's order;

D. Grant Midwest Environmental Defense Center and Sierra Club their reasonable costs of litigation, including attorneys' and experts' fees; and

E. Grant such further relief as the Court deems just and proper.

Respectfully submitted,

Kristin Henry (Cal. Bar No. 220908)
Sierra Club
85 Second Street, 2nd Floor
San Francisco, CA 94105
Telephone: (415) 977-5709
Facsimile:  (415) 977-5793
Kristin.Henry@sierraclub.org

FIRST AMENDED COMPLAINT

| | |
|---|---|
| 1 | Robert Ukeiley |
| | (*Pro Hac Vice* Application Pending) |
| 2 | Law Office of Robert Ukeiley |
| | 435R Chestnut Street, Suite 1 |
| 3 | Berea, KY 40403 |
| | Telephone: (859) 986-5402 |
| 4 | Facsimile:  (866) 618-1017 |
| | rukeiley@igc.org |
| 5 | |
| 6 | Counsel for Midwest  Environmental Defense Center and Sierra Club |
| 7 | |
| 8 | |

Dated: December 13, 2011

11

FIRST AMENDED COMPLAINT