1   IGNACIA S. MORENO
    Assistant Attorney General
2   Environment and Natural Resources Division
    EILEEN T. MCDONOUGH
3   Trial Attorney
    United States Department of Justice
4   Environmental Defense Section
    P.O. Box 7611
5   Washington, DC 20044
6   Telephone:  (202) 514-3126
    Fax: (202) 514-8865
7   Email:  eileen.mcdonough@usdoj.gov
    *Attorneys for Defendants*
8

9

10

11              IN THE UNITED STATES DISTRICT COURT

12          FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                      OAKLAND DIVISION

14

15

16
    MIDWEST ENVIRONMENTAL DEFENSE          Case No. 3:11-CV-05694-YGR
17  CENTER and SIERRA CLUB,
                                           **DEFENDANT'S REPLY**
18       Plaintiffs,                       **MEMORANDUM**
                                           **IN SUPPORT OF MOTION TO**
19  v.                                     **DISMISS PLAINTIFFS' SECOND**
                                           **CLAIM FOR RELIEF**
20
    LISA JACKSON, in her official capacity as
21  Administrator of the Environmental Protection
    Agency,
22
23       Defendant.

24

25

26

27

28

1

## TABLE OF CONTENTS

ARGUMENT .................................................................................................................... 2

I.     GUARDIANS HAVE FAILED TO SHOW THAT
       SECTION 166(a) IMPOSES A NONDISCRETIONARY
       DUTY THAT EPA HAS FAILED TO PERFORM ......................................... 2

       A.     Guardians' Argument Is Inconsistent With The Plain
              Language of Section 166(a). ................................................................. 2

       B.     Guardians Fail to Show That Applying Section 166(a)
              As Written Would Produce an Absurd Result.. ..................................... 5

       C.     EPA's Prior Statements Do Not Contradict the Agency's
              Present Argument ................................................................................... 8

              1.     PM$_{2.5}$ Rulemaking ....................................................................... 8

              2.     PM$_{10}$ Rulemaking  ....................................................................... 9

              3.     De Minimis Values  ............................................................... 10

CONCLUSION ............................................................................................................. 11

# TABLE OF AUTHORITIES

**CASES**

Alabama Power Co. v. Costle,
    636 F.2d 323 (D.C. Cir. 1980)......................................................................8, 10

American Petroleum Inst.v. Costle,
    665 F.2d 1176 (D.C. Cir. 1981).........................................................................2

Beisler v. C.I.R.,
    814 F.2d 1304 (9th Cir. 1987) ...........................................................................4

Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,
    467 U.S. 837 (1984).......................................................................................2, 8

Cooper Industries, Inc. v. Aviall Services, Inc.,
    543 U.S. 157 (2004)............................................................................................4

Environmental Defense Fund, Inc. v. United States Environmental Protection Agency,
    898 F.2d 183 (D.C. Cir. 1990)........................................................................5, 6

Marley v. United States,
    567 F.3d 1030 (9th Cir. 2009) ............................................................................4

Russello v. United States,
    464 U.S. 16 (1983)..............................................................................................4

United States v. Begay,
    622 F.3d 1187 (9th Cir. 2010),
    cert. denied, 131 S. Ct. 3026 (2011) .................................................................6

**STATUTES**

42 U.S.C. § 7407(d)(1)(B)(i) ............................................................................................4

42 U.S.C. § 7409(d)(1) .....................................................................................................4

42 U.S.C. § 7410(a)(1) ......................................................................................................4

42 U.S.C. § 7409(d)(1) .....................................................................................................4

42 U.S.C. § 7473...............................................................................................................7

42 U.S.C. § 7475(a)(3) ......................................................................................................8

42 U.S.C. § 7476(a) ............................................................................... passim

42 U.S.C. § 7604(a) ................................................................................1, 11

42 U.S.C. § 7607(d)(1)(a) ..............................................................................4

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 12(b)(1).............................................................................1, 11

**CODE OF FEDERAL REGULATIONS**

40 C.F.R. § 50.15 ...........................................................................................1

40 C.F.R. § 51.166(k)(1)..................................................................................8

40 C.F.R. § 52.21(k)(1).....................................................................................8

**FEDERAL REGISTER**

36 Fed. Reg. 8186 (April 30, 1971)..................................................................2

44 Fed. Reg. 8202 (Feb. 8, 1979) ....................................................................2

50 Fed. Reg. 13,130 (Apr. 2, 1985)..................................................................9

52 Fed. Reg. 24,672 (July 1, 1987)...............................................................7, 9

54 Fed. Reg. 41,218 (Oct. 5, 1989)..................................................................9

58 Fed. Reg. 31,622 (June 3, 1983)............................................................9, 10

73 Fed. Reg. 16,511 (Mar. 27, 2008)...............................................................1

75 Fed. Reg. 64,864 (Oct. 20, 2010)............................................................8, 9

1    The second claim in the complaint filed by Midwest Environmental Defense Center and

2  Sierra Club (jointly referred to as "Midwest") asserts that Lisa Jackson, Administrator, United

3  States Environmental Protect Agency ("EPA") has a mandatory duty enforceable through section

4  304(a) of the Clean Air Act ("CAA"), 42 U.S.C. § 7604(a) ("the citizen suit provision") to

5  promulgate regulations to prevent the significant deterioration ("PSD") of air quality within two

6  years after EPA *promulgates or revises* a National Ambient Air Quality Standard for a particular

7  pollutant. *See* First Amended Complaint ("Compl.") ¶¶ 32-36 (citing CAA section 166(a), 42

8  U.S.C. § 7476(a)). Midwest alleges that EPA breached this duty by failing to promulgate PSD

9  rules within two years of March 12, 2008, when the Agency promulgated revisions to the ozone

10  NAAQS. *See* 73 Fed. Reg. 16,511 (Mar. 27, 2008) (codified at 40 C.F.R. § 50.15) ("2008

11  Revised Ozone NAAQS"). Compl. ¶¶ 32-36.

12    For the reasons set forth below and in EPA's prior memorandum, Midwest's argument

13  must be rejected as inconsistent with the plain language of section 166(a). Midwest fails to

14  squarely address the actual language Congress used in section 166(a) and instead argues that the

15  PSD program would function more effectively if EPA were required to promulgate the PSD rules

16  each time a NAAQS is revised. These policy arguments must be addressed to Congress; the

17  federal courts must apply the statute as written, not as it could or how Midwest believes it should

18  have been written. Finally, Midwest contends that EPA has previously recognized that section

19  166(a) does impose a mandatory duty to issue PSD regulations when a NAAQS is revised. As

20  explained below, in making these arguments, Midwest takes certain statements out of context.

21    The Court's jurisdiction under the citizen suit provision is limited to compelling EPA to

22  perform duties that are nondiscretionary. Midwest fails to establish that section 166(a) imposed

23  a mandatory duty for EPA to promulgate PSD rules for ozone within two years after it revised

24  the ozone NAAQS. Accordingly, Midwest has failed to establish that the Court has jurisdiction

25  over the first claim in its complaint, and that claim should be dismissed pursuant to Fed. R. Civ.

26  P. 12(b)(1) for lack of subject matter jurisdiction.

27

28

Reply in Support of Motion to                                    Case No. 11-cv-05694-YGR
Dismiss Second Claim

1

**ARGUMENT**

2  I.   **MIDWEST HAS FAILED TO SHOW THAT SECTION 166(a) IMPOSES A
        NONDISCRETIONARY DUTY THAT EPA HAS FAILED TO PERFORM**

3

4       A.   **Midwest's Argument Is Inconsistent With the Plain Language of Section
             166(a).**

5

6       Much of Midwest's opposition is devoted to policy arguments as to which interpretation

7  of section 166(a) will most effectively implement the NAAQS and to analyzing past statements

8  by EPA.  The Supreme Court, however, has made clear that such arguments should not be

9  considered when there is no ambiguity in the plain language of the statute.  *Chevron, U.S.A., Inc.*

10  *v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842 (1984) ("First, always, is the

11  question whether Congress has directly spoken to the precise question at issue.  If the intent of

12  Congress is clear, that is the end of the matter.").  In this matter, Midwest's claim can be

13  dismissed based on the plain language of section 166(a) alone.

14       Section 166(a) provides:

15       In the case of the pollutants hydrocarbons, carbon monoxide, photochemical
         oxidants, and nitrogen oxides, the Administrator shall conduct a study and not
16       later than two years after August 7, 1977, promulgate regulations to prevent the
         significant deterioration of air quality which would result from the emissions of
17       such pollutants.  In the case of pollutants for which national ambient air quality
         standards are promulgated after August 7, 1977, he shall promulgate such
18       regulations not more than 2 years after the date of promulgation of such standards.

19  42 U.S.C. § 7476(a).  EPA's obligations with respect to ozone are defined by the first sentence,

20  which requires only the promulgation of regulations within two years after August 7, 1977.

21  (Ozone is the chemical species indicator used for photochemical oxidants.).[1]

22

23

24  _____

25       [1]     In 1971, EPA issued NAAQS using "photochemical oxidants" as the chemical
    species indicator.  36 Fed. Reg. 8186 (April 30, 1971).  EPA revised these NAAQS in 1979 and,
26  as part of the revision, modified the indicator for the standard to focus on "ozone" because it was
    the photochemical oxidant measured to implement the original standard.  EPA thus changed the
27  title of the NAAQS to refer to "ozone" rather than "photochemical oxidants."  44 Fed. Reg.
    8202, 8219-20 (Feb. 8, 1979).  *See American Petroleum Inst. v. Costle*, 665 F.2d 1176, 1186
28  (D.C. Cir. 1981).

2

1      Midwest does not seek relief for any alleged violation of a duty imposed by this sentence,

2  however.  Instead, Midwest contends that the 2008 Ozone Revisions triggered a mandatory duty

3  under the second sentence.  Midwest claims that the second sentence of section 166(a) requires

4  the promulgation of new PSD regulations within two years after EPA promulgates *or revises* a

5  NAAQS after August 7, 1977, even though the sentence uses only "promulgate" and does not

6  mention revision.  *See* Opp. at 7-8.  Midwest tries to justify reading an obligation plainly

7  applicable when EPA *promulgates* a NAAQS for an additional pollutant to also apply when EPA

8  *revises* an existing NAAQS by suggesting that there is no difference between the two terms so

9  that the statutory term "promulgation" should be read as including "revision."  *Id.*

10      Midwest's claim that Congress intended that, in section 166(a), "promulgate" should be

11  read to include "revise," Opp. at 7-8, 13, is rebutted by the numerous provisions of the CAA that

12  demonstrate that where Congress intended for a mandatory duty to be triggered by either

13  promulgation or revision of a NAAQS, Congress said so explicitly:

14      1.    Section 109(d)(1) requires that, every five years, EPA must review the air quality

15  criteria published under CAA section 108 and the NAAQS promulgated under section 109(a)

16  "and shall make such *revisions* in such criteria and standards and promulgate such new standards

17  as may be appropriate."  (emphasis added).

18      2.    Section 110(a)(1) requires that the States shall submit SIPs "within 3 years ( . . . )

19  of the promulgation of a [NAAQS] (*or any revision thereof*)." (emphasis added).

20      3.    Section 107(d)(1)(B)(i) requires that "[u]pon promulgation *or revision* of a

21  [NAAQS]," the Administrator shall promulgate certain submitted designations of areas as being

22  in nonattainment, attainment, or unclassifiable, "as expeditiously as practicable, but in no case

23  later than 2 years from the date of promulgation of the new or *revised* [NAAQS]."  (emphasis

24  added).

25      4.    Section 307(d)(1)(a) makes specific rulemaking requirements applicable to "the

26  promulgation *or revision* of any [NAAQS]."  (emphasis added).

27  42 U.S.C. §§ 7409(d)(1), 7410(a)(1), 7407(d)(1)(B)(i), 7607(d)(1)(a).  *See* EPA Memo at 8-9.

28

1    In deciding which interpretation of section 166(a) is correct, the Court must consider the

2  statute as a whole.  Contrary to Midwest's suggestion, the Court cannot simply ignore EPA's

3  demonstration that Congress considered "promulgation" and "revision" to have different

4  meanings.  Otherwise, Congress' inclusion of the words "revision" or "revise" in each of these

5  provisions would be redundant and meaningless.  This outcome contradicts a basic rule of

6  statutory construction:  the Court "must, if possible, construe a statute to give every word some

7  operative effect." *Cooper Industries, Inc. v. Aviall Services, Inc.*, 543 U.S. 157, 167 (2004).  *See*

8  *also Beisler v. C.I.R.*, 814 F.2d 1304, 1307 (9th Cir. 1987) ("We should avoid an interpretation

9  of a statute that renders any part of it superfluous and does not give effect to all of the words

10  used by Congress.").

11    Accordingly, the Court should reject Midwest's claim that the word "promulgated" in

12  section 166(a) should be construed as including "revised."  Instead, the Court should recognize

13  that Congress regarded promulgation and revision as different events and conclude that its

14  omission of any command to revise PSD rules or take action after a NAAQS *revision* should be

15  construed as showing that Congress did not intend to impose any such mandatory duty.  *See*

16  *Marley v. United States*, 567 F.3d 1030, 1037 (9th Cir. 2009) ("Where Congress 'includes

17  particular language in one section of a statute but omits it in another section of the same Act, it is

18  generally presumed that Congress acts intentionally and purposely in the disparate inclusion or

19  exclusion.'") (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983).

20    Moreover, Midwest overlooks plain language that restricts application of the second

21  sentence of section 166(a) to "pollutants" for which ambient air quality standards are established

22  after the specified date.  In addition to inserting the word "revisions" where it is not used,

23  Midwest's interpretation would rewrite the second sentence to make it applicable "[i]n the case

24  of ... national ambient air quality standards ... promulgated after August 7, 1977" while omitting

25  the key language limiting the applicability of this sentence to "pollutants for which" NAAQS

26  "are promulgated" after this date.  If this language is not plain enough on its face, the placement

27  of this language in context with section 163 of the Act and the first sentence of section 166(a)

28

4

1   makes even more clear that EPA's revision of the ozone NAAQS in 2008 did not trigger a

2   mandatory duty for EPA to promulgate or revise any PSD regulations applicable to ozone.

3       Section 163 of the Act established specific maximum allowable concentrations, often

4   called PSD increments, for particulate matter and sulfur dioxide. 42 U.S.C. § 7473. The

5   pollutants covered by section 163 have been described by EPA and the courts as the "set I"

6   pollutants while the pollutants covered by the first sentence in section 166(a) are known as the

7   "set II" pollutants. *Environmental Defense Fund, Inc. v. United States Environmental Protection*

8   *Agency*, 898 F.2d 183, 184 (D.C. Cir. 1990). As discussed above, ozone is among the "set II"

9   pollutants covered by the first sentence of section 166(a) of the Act. Within this context, it is

10  clear that the second sentence of section 166(a) was primarily intended to cover additional

11  pollutants "for which" a NAAQS is promulgated at a later date. Although EPA has previously

12  acknowledged that the second sentence of section 166(a) may be read to apply to a different form

13  (or indicator) of a pollutant that is included in "set I," this is insufficient to establish that EPA

14  has a mandatory duty to promulgate new regulations under section 166 when the Agency revises

15  a NAAQS without altering the form of the pollutant covered by the NAAQS.

16  **B.    Midwest Fails to Show That Applying Section 166(a) As Written Would
         Produce an Absurd Result.**

17

18      In evaluating Midwest's argument, it is important to remember that the question before

19  the Court is limited to the issue of whether the 2008 Ozone NAAQS Revision triggered a

20  *mandatory* duty for EPA to promulgate PSD rules within two years. EPA's position on the

21  proper interpretation of the statute with respect to that question does not limit the Agency's

22  *discretionary* authority to take such action.

23      Midwest contends that to construe section 166(a) as reflecting Congress' deliberate

24  omission of "revision" would produce an absurd result. Opp. at 11 (citing *United States v.*

25  *Begay*, 622 F.3d 1187, 1197 (9th Cir. 2010), *cert. denied*, 131 S. Ct. 3026 (2011) ("It is true that

26  interpretations of a statute which would produce absurd results are to be avoided if alternative

27  interpretations consistent with the legislative purpose are available.")). Midwest maintains that it

28  would be absurd to interpret the CAA as establishing a mandatory duty for EPA to review and

5

1   revise the NAAQS every five years, but not a mandatory duty to promulgate PSD rules on the

2   same schedule. *See id.* at 10-11. According to Midwest, the PSD rules must be revised so that

3   the reductions to be accomplished will correspond to the standards set forth in a revised

4   NAAQS.[2]

5        Much of Midwest's argument hinges on the perceived need to recalibrate the increments

6   used in the PSD rules to ensure that they correspond to the revised NAAQS. Opp. at 10-11.

7   This is a particularly weak basis for its argument because section 166(a) does not require EPA to

8   establish the values of PSD increments by using a percentage of the NAAQS that arguably must

9   be continually recalibrated. *Environmental Defense Fund, Inc.*, 898 F.2d at 185. In the *EDF*

10  case, the D.C. Circuit made clear that many factors must be considered in establishing the form

11  of the regulations promulgated under section 166 and that such regulations need not necessarily

12  correspond to the characteristics of the NAAQS covering the same pollutant for which section

13  166 regulations are promulgated. Furthermore, though Congress contemplated that EPA might

14  establish increments for the set II pollutants identified in section 166(a) to fulfill the

15  requirements of section 166, Congress did not require that EPA use such values to meet the

16  requirements of section 166(c)-(d) of the Act. *Id.* at 185, 190. Thus, Midwest's discussion of the

17  approach that EPA has used in developing PSD rules for other pollutants and what the results

18  could be if this same analysis was applied to ozone in a future rulemaking are not relevant. *See*

19  Opp. at 4-7, 10-11.[3]

20  _____

21        [2]    Midwest asserts that EPA, in response to an administrative petition filed by Sierra

22  Club, has stated that the Agency will begin the process to develop regulations to establish
    specific mathematical modeling requirements to be used in determining whether certain emission

23  sources contribute to violations of the ozone NAAQS. Opp. at 4 n.1. The relevance of this note
    is not clear. Furthermore, EPA has not made a determination to promulgate the type of

24  regulations described by Midwest, but only to engage in rulemaking to evaluate updates to the

25  regulations at issue.

26        [3]    Midwest also points to a 1980 preamble discussing establishment of de minimis values
    for a number of pollutants to support its argument here. Opp. at 10 (citing 45 Fed. Reg. 52,707-

27  08). Because Midwest has not shown that EPA's actions in that rulemaking were based in any
    way on section 166 of the Act, this argument fails for the same reasons as discussed below. *See*

28  *post* at 10-11.

6

1    Moreover, in order to accept Midwest's argument, the Court would have to characterize

2   other provisions of the CAA as absurd.  In CAA section 163 ("Increments and Ceilings"),

3   enacted in 1977, Congress established specific maximum allowable increases for the pollutants

4   sulfur oxide ("$SO_2$") and particulate matter ("PM").[4]  Congress did not consider it necessary to

5   mandate that EPA update these increments and ceilings if existing NAAQS for these pollutants

6   are updated.  *See also* section 165(d)(2)(C)(iv)(incorporating these limitations into permitting

7   process).

8    In 1990, Congress amended section 166 to add section 166(f), which provided that "the

9   Administrator is *authorized*" to promulgate new "maximum allowable increases" for $PM_{10}$ to

10  substitute for the increases in sections 163 and 165.  (emphasis added).  Congress did not

11  mandate that EPA must revise the maximum allowable increases, but only provided the authority

12  to do so.  Moreover, Congress did not adopt a similar provision authorizing changes with respect

13  to the $SO_2$ increments established in section 163 through section 166.  EPA has never published

14  a proposal to revise the statutory $SO_2$ increments despite several revisions of the $SO_2$ NAAQS.

15  These provisions establish that Congress did not conclude that periodic mandatory revisions of

16  the PSD rules were necessary for the PSD program to function effectively, and further refute

17  Midwest's claim.

18   There is also a very practical reason that each NAAQS revision may not require a

19  revision to the PSD rules even to maintain the symmetry sought by Midwest.  A change in the

20  NAAQS may be too small to warrant a change in the PSD rules.  Thus, it is sensible to conclude

21  that Congress deliberately decided against mandating a revision of the PSD rules each time a

22  NAAQS is revised.

23   Midwest also seems to suggest that an EPA rulemaking action under section 166(a) of the

24  Act is necessary to apply the 2008 ozone NAAQS in the PSD permitting program.  This is

25  plainly not the case, as section 165(a)(3) of the Clean Air Act specifies that a permit applicant

26  must demonstrate that its proposed construction will not cause or contribute to a violation of

27

28    [4]    These limits serve the same function as the "specific numerical measures against
which permits can be evaluated" for "other pollutants" required for PSD rules by section 166(c).

7

1  "any" NAAQS. 42 U.S.C. § 7475(a)(3); *see also* 40 C.F.R. § 51.166(k)(1); 40 C.F.R. §

2  52.21(k)(1). EPA has long interpreted the PSD permitting criteria to apply to each new or

3  revised NAAQS as of the date the NAAQS becomes effective unless EPA provides otherwise.

4  52 Fed. Reg. 24,672, 24,682 n.9 (July 1, 1997). The D.C. Circuit held long ago that EPA action

5  under section 166 is not a prerequisite to implementing PSD permitting requirements for

6  individual pollutants covered by a NAAQS. *Alabama Power Co. v. Costle*, 636 F.2d 323, 405-

7  06 (D.C. Cir. 1980).

8    **C.    EPA's Prior Statements Do Not Contradict the Agency's Present Argument**

9        Midwest claims that EPA has previously interpreted section 166(a) as imposing a

10  mandatory duty to promulgate PSD rules within two years after promulgating a NAAQS. Opp.

11  at 9-10. First, this argument is not relevant because the statute is clear. Agency statements

12  regarding the proper interpretation are relevant where the statute is ambiguous on its face. *See*

13  *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. at 843 ("if the

14  statute is silent or ambiguous with respect to the specific issue, the question for the court is

15  whether the agency's answer is based on a permissible construction of the statute."). Second,

16  even if the statute were ambiguous, Midwest takes the quotations on which it relies out of

17  context.

18        **1.    PM$_{2.5}$ Rulemaking**

19        Midwest seeks to rely on language in a preamble to a final rule in which EPA cited its

20  authority under section 166(a) in promulgating PSD rules for PM$_{2.5}$. Opp. at 9 (quoting 75 Fed.

21  Reg. 64,864, 64,880 (Oct. 20, 2010)). Midwest suggests that EPA's description of section

22  166(a) supports Midwest's claim that section 166(a) requires EPA to establish PSD rules after

23  revising an existing NAAQS, as well as after EPA has promulgated a NAAQS for an additional

24  pollutant. Midwest's error is that it assumes that the PM$_{2.5}$ NAAQS, promulgated in 1997, must

25  be treated as a revision to an existing NAAQS. In preamble to the PM$_{2.5}$ PSD rules, however,

26  EPA explained that it was relying on authority under section 166(a) to promulgate the PSD rules

27  because

28

8

1   for purposes of section 166(a), the promulgation of a NAAQS for PM$_{2.5}$
2   established a NAAQS *for an additional pollutant* after 1977.

3   *Id.* at 64,871 ("Rationale for the Applicability of Section 166(a)") (emphasis added). Midwest

4   simply ignores this language, which plainly rebuts Midwest's claim that EPA had concluded that

5   section 166(a) required EPA to promulgate PSD rules after revising a NAAQS. In fact, EPA's

6   conclusion regarding the applicability of section 166(a) is exactly the position that EPA

7   advocates here: section 166(a) applies when a NAAQS is promulgated for an additional

8   pollutant, not where an existing NAAQS for a pollutant is revised.

9           **2.**      **PM$_{10}$ Rulemaking**

10        Midwest also seeks to rely on language from EPA's preliminary efforts in 1985 and 1987

11   to address PSD rules for PM$_{10}$. Opp. at 12 (citing 50 Fed. Reg. 13,130, 13,148 (April 2, 1985)

12   and 52 Fed. Reg. 24,672, 24,685 n.16 (July 1, 1987)). Like the PM$_{2.5}$ NAAQS promulgated by

13   EPA in 1997, the PM$_{10}$ NAAQS promulgated in 1987 established a new "pollutant" indicator for

14   the NAAQS not previously used. Thus, even if EPA's proposed actions in the 1980's with

15   respect to PM$_{10}$ could have established an EPA interpretation of section 166, at most they show

16   that EPA considered applying section 166 in a specific situation where EPA had "revised" the

17   NAAQS to add a different form of a pollutant from what EPA had previously regulated. The

18   1980's proposals cited by Midwest are specific to this situation and do not stand for the general

19   proposition that any revision of a NAAQS triggers a mandatory duty for EPA under section 166

20   of the Act.

21        Furthermore, to the extent either of these broader rulemakings addressing PM$_{10}$ actually

22   proposed regulations for PM$_{10}$ under section 166 of the Act, these actions were superseded by a

23   subsequent EPA proposal that was focused solely on establishing PSD increments for PM$_{10}$

24   under section 166 of the Act. 54 Fed. Reg. 41218 (Oct. 5, 1989). The following passage from

25   that action reflects an evolution in EPA's understanding of the extent to which section 166 was

26   applicable to the establishment of a NAAQS for a new form of a pollutant for which Congress

27   had established PSD increments:

28        It is not as clear from the face of the statute, however, how Congress intended
     section 166 to be applied to the circumstances here, where the particulate matter

9

NAAQS and control strategy are redirected to an entirely new indicator ($PM_{10}$). The EPA, therefore, was faced with the questions of whether section 166 applies to the unique situation presented by $PM_{10}$ and, if so, how it applies.

54 Fed. Reg. at 41,220.

Following this proposal, EPA did not take final action to establish PSD regulations for $PM_{10}$ until 1993. 58 Fed. Reg. 31,622 (June 13, 1993). EPA noted that commenters had disputed its authority to act under section 166. *Id.* at 31,624. EPA did not respond to these comments by announcing a final interpretation of section 166(a). Instead, EPA relied upon section 166(f) which expressly authorized the Agency to adopt $PM_{10}$ increments, and obviated any need for EPA to evaluate its authority under section 166(a). *See id.* at 31,624-25. Section 166(f) was added to the CAA in 1990, subsequent to the notices cited by Midwest, and specifically authorizes EPA to promulgate regulations substituting new increments to replace the maximum allowable increases established by Congress in section 163. Thus, when the $PM_{10}$ rulemakings are considered as a whole, it is clear that, in taking final action on the PSD rules, EPA did not rely on section 166(a), much less conclude that this provision establishes a mandatory duty for EPA to promulgate PSD rules subsequent to the revision of a NAAQS promulgated before 1977.

### 3.    De Minimis Values

Finally, Midwest incorrectly allege that its position is supported by EPA's action in 1987 to revise its PSD regulations to add a variety of de minimus or screening values for $PM_{10}$ (distinct from the PSD increments for $PM_{10}$). Opp. at 8. Midwest cannot show that EPA's actions in this part of the rulemaking were in any way based on section 166 of the Act. Consistent with the holding by the D.C. Circuit in *Alabama Power*, 636 F.2d at 405-06, section 166 of the Act is not the exclusive means through which EPA may establish PSD requirements for pollutants. The fact that EPA updated these values once in 1987 to conform to the $PM_{10}$ NAAQS adopted at the same time does not show anything with respect to EPA's interpretation of section 166 of the Act. Furthermore, although Midwest alleges EPA revised these values

10

1 | again after revisions to the $PM_{10}$ NAAQS in 1997 and 2006 (which did not change the pollutant

2 | indicator), Midwest does not cite a specific EPA rulemaking to substantiate this claim.

3 |      Accordingly, Midwest's argument that EPA's litigation position is inconsistent with that

4 | adopted by the Agency in promulgating regulations must be rejected.

5 | **CONCLUSION**

6 |      Because Midwest's second claim is not premised on a duty that Congress established as

7 | nondiscretionary under section 166(a), this claim falls outside the scope of the Court's

8 | jurisdiction under the citizen suit provision of the CAA, 42 U.S.C. § 7604(a), and so must be

9 | dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

10 |     Respectfully submitted,

11 |     IGNACIA S. MORENO
    Assistant Attorney General

12 |     Environment and Natural Resources Division

13 |     /s/ Eileen T. McDonough
    EILEEN T. MCDONOUGH

14 |     Trial Attorney
    United States Department of Justice

15 |     Environmental Defense Section
    P.O. Box 7611

16 |     Washington, D.C. 20044
    Telephone: (202)514-3126

17 |     Fax: (202) 514-8865
    Email: eileen.mcdonough@usdoj.gov

18 | 

19 |     *Attorneys for Defendant*
Of Counsel:

20 | 

21 | Brian Doster
Geoffrey Wilcox

22 | Melina Williams
EPA Office of General Counsel

23 |

24 |

25 |

26 |

27 |

28 |

11